1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO

3    DENNIS ALGARÍN,

4         Plaintiff,

                                            Civil No. 08-2354 (JAF)
5         v.

6    JOHN E. POTTER,

7         Defendant.

8                              **OPINION AND ORDER**

9         Plaintiff, David Algarín, brings the present action under the federal-sector provision of

10   the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a(a), against Defendant,

11   U.S. Postal Service Postmaster General John E. Potter.  (Docket No. 1.)  Defendant moves for

12   summary judgment (Docket No. 26), and Plaintiff opposes (Docket No. 34).

13                                         **I.**

14                          **Factual and Procedural History**

15        We derive the following factual and procedural summary from the parties' pleadings,

16   motions, exhibits, and statements of uncontested facts. (Docket Nos. 1; 15; 26; 27; 28; 32; 34;

17   37; 38; 41.)  We briefly state here only those facts material to the motion at hand.

18        Plaintiff, born January 9, 1950, worked during all times relevant to this case as a

19   customer-services supervisor for the U.S. Postal Service.  In 2001, Plaintiff's supervisor, Israel

20   Ortiz, awarded Plaintiff for excellence in his work.  In 2002, Plaintiff applied for a promotion,

1  to Loíza postmaster, but was not selected.  Following that decision, on August 31, 2002,

2  Plaintiff sought Equal Employment Opportunity ("EEO") counseling, alleging that the deciding

3  official, Joshua Quiñones, had discriminated against him on the basis of sex and age.  He again

4  sought counseling on August 10, 2003, this time alleging that Ortiz had discriminated against

5  him on the basis of sex and age.

6        The episode of alleged retaliation that instigated the present suit began around September

7  2003, when Plaintiff again applied to fill the Loíza postmaster position.  Raymond Simonetti,

8  who eventually was selected for the job, also applied; he and Plaintiff are the same age and held

9  the same position, but Simonetti had fewer years of experience.  Both were recommended by

10  a reviewing committee and advanced to the group of four finalists for the position.  The

11  selecting official was Quiñones.  On December 15, 2003, Quiñones offered the position to

12  Simonetti, who accepted.

13        Quiñones reported that he selected Simonetti over Plaintiff because Plaintiff, unlike

14  Simonetti, had been the target of employee complaints and had a history of trouble with

15  supervisors.  But Plaintiff submits evidence that Simonetti, too, had been the target of

16  disciplinary letters and that Quiñones most likely knew about them before he selected Simonetti.

17  (See Docket No. 32-5.)  The evidence also shows that during the selection process, Quiñones

18  sought the advice of Ortiz, who did not recommend Plaintiff for the position.  Ortiz told

19  Quiñones at that time that Plaintiff had a history of filing grievances and suits against

1   supervisors, activity that Ortiz thought "disloyal".  Quiñones reported that he relied heavily on

2   Ortiz' opinion when he made his decision.

3        On February 9, 2004, Plaintiff contacted an EEO counselor alleging that Quiñones'

4   decision denying him the Loíza postmaster position was retaliation for his prior EEO activity.

5   He filed a formal complaint to that effect on June 14, 2004.  Plaintiff exhausted his retaliation

6   claim through the administrative process and was ultimately unsuccessful.  (See Docket No. 28

7   at 5-6.)

8        On December 3, 2008, Plaintiff filed suit in this court.  (Docket No. 1.)  Defendant

9   moved for summary judgment on October 16, 2009.  (Docket No. 26.)  Plaintiff responded

10  (Docket No. 34); Defendant replied to that response (Docket No. 37); and Plaintiff surreplied

11  to that reply (Docket No. 41).

12                                        **II.**

13                      **Summary Judgment Under Rule 56(c)**

14       We grant a motion for summary judgment "if the pleadings, the discovery and disclosure

15  materials on file, and any affidavits show that there is no genuine issue as to any material fact

16  and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual

17  dispute is "genuine" if it could be resolved in favor of either party and "material" if it potentially

18  affects the outcome of the case.  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir.

19  2004).  In evaluating a motion for summary judgment, we view the record in the light most

20  favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

1    The movant carries the burden of establishing that there is no genuine issue as to any

2    material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "Once the moving party has

3    made a preliminary showing that no genuine issue of material fact exists, the nonmovant must

4    'produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy

5    issue.'" Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (quoting Triangle Trading Co.

6    v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)). The nonmovant "may not rely merely on

7    allegations or denials in its own pleading; rather, its response must . . . set out specific facts

8    showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

9                                                  **III.**

10                                            **Analysis**

11    Defendant argues that he is entitled to summary judgment because Plaintiff neither

12    exhausted his administrative remedy as to his claim of age discrimination nor can establish a

13    prima-facie case for age discrimination. (Docket No. 27.) Defendant further argues that, having

14    no viable age-discrimination claim, Plaintiff cannot succeed on his claim for retaliation. (Id.)

15    We address each argument in turn, noting at the outset that a claim of discrimination on the

16    basis of age and a claim of retaliation for ADEA-protected activity are two separate claims. See

17    Gomez-Perez v. Potter, 128 S. Ct. 1931, 1943 (2008) (contemplating separate claims).

18    **A.    Plaintiff's Age-Discrimination Claim**

19    In his complaint, Plaintiff alleges age discrimination under the ADEA, claiming that

20    Defendant selected "a younger, less qualified person" for the Loíza postmaster promotion. (See

Civil No. 08-2354 (JAF)                                                                                   Page -5-

1  Docket No. 1 at 7-8.)  But in his opposition to summary judgment, and surreply to Defendant's

2  response to same, Plaintiff effectively refines his claim to be solely one of retaliation.  (See

3  Docket No. 34 at 13 (decrying Defendant's mischaracterization of Plaintiff's claim as one of

4  "substantive age discrimination"); 41 at 2-5 (same); id. at 4 ("This case is not about whether

5  Mr. Simonetti was much younger that [sic] Mr. Algarín, it is about whether Mr. Algarín was

6  denied the promotions because he was filing 'grievances' and 'suits' based on age and other

7  reasons . . . ." (emphasis in original)).)  We, thus, conclude that Plaintiff has abandoned his

8  claim of discrimination on the basis of age, and we decline to consider same.  Cf. Schneider v.

9  Harrison Elec. Workers Trust Fund, 382 F. Supp. 2d 261, 263 (D. Mass. 2005) (dismissing

10  ERISA claim that the court found abandoned by plaintiff during summary judgment), aff'd,

11  Schneider v. Local 103 I.B.E.W. Health Plan, 442 F.3d 1, 2 (1st Cir. 2006).

12  **B.    Retaliation Under § 633a(a)**

13          The ADEA proscribes an employer's retaliation against an employee who "invoke[s] the

14  statute's protections." Ramirez Rodriguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67

15  (1st Cir. 2005) (discussing 29 U.S.C. § 623(d)); see Gomez-Perez, 128 S. Ct. at 1936

16  (recognizing that said proscription applies to claims filed under 29 U.S.C. § 633a).  To establish

17  a prima-facie case of retaliation, a plaintiff must show that "(i) he engaged in ADEA-protected

18  conduct, (ii) he was thereafter subjected to an adverse employment action, and (iii) a causal

19  connection existed between the protected conduct and the adverse action." Ramirez Rodriguez,

20  425 F.3d at 84 (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991)).

Civil No. 08-2354 (JAF)                                                              Page -6-

1          Once the plaintiff establishes a prima-facie case, the burden shifts to the employer to

2    proffer a nondiscriminatory reason for the adverse action.  Id.  If the employer does so, the

3    plaintiff then must show that the employer's reason is "pretext masking retaliation." Id.  At that

4    point, the court considering summary judgment must determine "whether the aggregate

5    evidence of pretext and retaliatory animus suffices to make out a jury question."  Id. (quoting

6    Mesnick, 950 F.2d at 827).

7          Defendant makes no argument regarding the sufficiency of Plaintiff's prima-facie case

8    of retaliation (see Docket Nos. 27; 37); he instead argues that Plaintiff's retaliation claim must

9    fail due to the failure of his age-discrimination claim (Docket No. 27 at 5).  In so arguing,

10   Defendant misapplies Franceschi v. U.S. Department of Veterans Affairs, 514 F.3d 81 (1st Cir.

11   2008), wherein the First Circuit discussed the permissibility of entertaining retaliation claims

12   that were not exhausted during administrative proceedings.  There, the court found that while

13   a plaintiff need not have exhausted his retaliation claim, so long as he exhausted an underlying

14   discrimination claim, that "bootstrapped" retaliation claim cannot survive where the underlying

15   claim itself is dismissed for failure to exhaust.  Franceschi, 514 F.3d at 86-87.  That finding is

16   inapposite to the case at hand, as Plaintiff's retaliation claim is not bootstrapped; Plaintiff

17   exhausted his retaliation claim before the EEOC (see, e.g., Docket No. 28-4).  Here, instead, we

18   apply clear First Circuit precedent that a retaliation claim does not depend on the viability of an

19   underlying discrimination claim.  See, e.g., Ramirez Rodriguez, 425 F.3d at 84 n.20 ("It is not

1    essential to a plaintiff's prima facie case [of retaliation for ADEA-protected activity] that the

2    underlying conduct actually constitute an ADEA violation.").

3           Applying the proof structure laid out in Rodriguez Ramirez, and despite Defendant's

4    failure to address the issue, we now consider whether Plaintiff has presented "evidence from

5    which a reasonable jury could infer that the employer retaliated against him for engaging in

6    ADEA-protected activity."  Mesnick, 950 F.2d at 828; see id. at 828-29 (discussing evidence

7    of retaliation sufficient to survive summary judgment).  First, we find that Plaintiff can establish

8    a prima-facie case of discrimination.  Plaintiff filed an ADEA complaint, see, e.g., Fantini v.

9    Salem State College, 557 F.3d 22, 32 (1st Cir. 2009) (deeming formal and informal complaints

10   of Title VII discrimination statutorily-protected activity);[1] he thereafter suffered an adverse

11   employment action when he was refused the Loíza postmaster promotion, see White v. N.H.

12   Dep't of Corr., 221 F.3d 254, 262 (1st Cir. 2000) ("Adverse employment actions include . . .

13   refusals to promote . . . ." (internal quotation marks omitted)); and record evidence suggests that

14   Quiñones denied Plaintiff's promotion in retaliation for Plaintiff's earlier complaint.[2]  Next, we

_____

        [1] As to ADEA-protected activity that serves as the trigger for alleged retaliation, a plaintiff "must demonstrate only that [he] had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  Fantini, 557 F.3d at 32 (internal quotation marks omitted).  Defendant in this case does not claim that Plaintiff filed the relevant EEO complaints in bad faith.

        We note for the sake of clarity that while Fantini was a Title VII suit, the same analysis applies in the ADEA context.  See Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 n.9 (1st Cir. 1996) ("The analytical framework for ADEA discrimination and retaliation cases was patterned after the framework for Title VII cases, and our precedents are largely interchangeable.")

        [2] To explain this finding, we need only reference Ortiz' deposition, which describes the impression of Plaintiff that heavily influenced Quiñones' decision: "[H]e's a constant complainer,

1    find that Defendant has offered a nondiscriminatory reason for the decision not to promote

2    Plaintiff, namely that Plaintiff had trouble with employees and supervisors alike.  See supra

3    Part I.  Finally, we find that plaintiff has presented evidence sufficient to support a reasonable

4    juror's inference that Defendant's reason is pretextual.[3]  Considering the evidence as a whole,

5    we conclude that Plaintiff meets the Mesnick standard, supra, for surviving summary judgment

6    on his retaliation claim.

7                                                              IV.

8                                                         Conclusion

9            For the reasons stated herein, we **GRANT IN PART** and **DENY IN PART** Defendant's

10    motion for summary judgment (Docket No. 26).  We **DISMISS** Plaintiff's claim of age

11    discrimination, but we **RETAIN** Plaintiff's retaliation claim.

12           **IT IS SO ORDERED.**

13           San Juan, Puerto Rico, this 19th day of January, 2010.

14                                                              s/José Antonio Fusté
15                                                              JOSE ANTONIO FUSTE
16                                                              Chief U.S. District Judge

---

didn't get along with anybody, filing grievances, suits everywhere you go, you know?  To me, that's
disloyal." (Docket No. 38-6 at 3.)  This supports the inference that retaliation motivated the adverse
employment action in this case.  See DeCaire v. Mukasey, 530 F.3d 1, 20 (1st Cir. 2008) ("[T]he
protesting of illegal discrimination is protected by law and cannot be a basis for a loyalty test.").

[3] For example, Quiñones claimed that he selected Simonetti over Plaintiff because Simonetti
experienced no conflict with employees or supervisors.  See supra Part I.  But Plaintiff's evidence shows
that distinction illusory.  Id.  This calls into question the distinction that Quiñones claims drove his
decision, leaving room for the inference that his decision was retaliatory.